**RECEIVED**
IN ALEXANDRIA, LA.

JUL 0 1 2010

TONY R. MOORE, CLERK
BY _____
DEPUTY

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| ANN DESHOTELS, ET AL | : | DOCKET NO. 08-1378 |
| VS. | : | JUDGE TRIMBLE |
| GREGORY P. NORSWORTHY, ET AL | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a "Motion for Summary Judgment" (R. #82) wherein defendants, City of Lake Charles (the "City"), Jeff Pittman ("Pittman"), Kevin O'Rourke ("O'Rourke"), Jeff Morgan ("Morgan"), John Thacker ("Thacker"), Robert McCauley ("McCauley"), Larry Moss ("Moss") and St. Paul Fire & Marine Insurance Company ("St. Paul") move for summary judgment in their favor pursuant to Federal Rule of Civil Procedure 56 on the grounds that there is no genuine issue of material fact for trial.

## FACTUAL STATEMENT

For a recitation of the facts, see the Memorandum Ruling dated March 8, 2010.[1]

Other relevant facts as to the defendants who filed the instant motion are as follows: because Deshotels was kicking, Officer Morgan grasped one of his legs and folded it over the other.[2] O'Rourke gave verbal commands to Deshotels to stop resisting or he would be Tased. Nevertheless, Deshotels refused to surrender his hands. O'Rourke conducted a 5 second drive stun to Deshotels'

---

[1] R. #69.

[2] Defendants' exhibit F, depo. of Jeff Morgan, p. 23, line, 7, p. 24, line 6.

right upper back/shoulder where Deputy Marshall sought to gain control of his right arm.[3]

Deshotels continued to struggle and refused to surrender his hands by keeping them under his torso out of the law enforcement officers' reach and view.[4] During the struggle, the officers were unaware of whether or not Deshotels was armed with a weapon.[5]

The first taser stun had no effect, and even though law enforcement officers continued to give commands, Deshotels continued to resist arrest.[6] O'Rourke tasered Deshotels a second time in the lower back area; the officers then retrieves Deshotels arms and applied their handcuffs.[7]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[8] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[9]  A dispute about a

---

[3] Defendants' exhibit E, depo. of Kevin O'Rourke, p. 32, lines 2-23, p. 36, lines 1-23.

[4] Defendants' exhibit E, O'Rourke depo, p. 112, lines 4-13, Defendants' exhibit F, Morgan depo., p. 30, line 18, p. 32, line 12.

[5] Defendants' exhibit D, Pittman depo. of Jeff Pittman, p. 34, line 3, p. 35, line 1; defendants' exhibit F, Morgan depo., p. 30, line 18, p. 32, line 12; defendants exhibit G, depo. of Travis Miller, p. 58, line 24, p. 50, line 19.

[6] Defendants' exhibit E, O'Rourke depo., p. 36, line 12, p. 37, line 4, defendants' exhibit F, Morgan depo. p. 43, lines 7-13..

[7] Id.

[8] Fed. R.Civ. P. 56(c).

[9] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[10] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[11] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[12] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[13] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[14] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[15]

## LAW AND ANALYSIS

Defendants maintain that there is no genuine issue of material fact concerning the non-responsibility of either the City or its law enforcement officers.

*42 U.S.C. § 1983 claims*

Plaintiffs bring § 1983 claims against the City contending that the policies concerning the

---

[10] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[11] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

[12] Anderson, 477 U.S. at 249.

[13] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[14] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[15] Anderson, 477 U.S. at 249-50.

use of a Taser were either vague and/or the officers were improperly trained. Thus, plaintiffs attempt to demonstrate that the municipality was the "moving force" behind the injury and damages they allege.[16] The City contends that plaintiffs have failed to identify a policy maker, and allege in conclusory fashion that its policies and practices for investigation and training were inadequate and the moving force which resulted in a deprivation of plaintiffs' constitutional rights. The City argues that because plaintiffs cannot prove that the policies or customs of the Lake Charles Police Department ("LCPD") were unconstitutional and the moving force behind a constitutional violation, it is entitled to summary judgment in its favor.

Municipalities and other local governmental bodies are "persons" within the meaning of § 1983.[17] However, a municipality may not be held liable under § 1983 solely because it employs a tortfeasor.[18] Instead, the plaintiff must identify a municipal "policy" or "custom" that caused the injury.[19] The "official policy" requirement was intended to distinguish acts of the *municipality* from the acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to actions for which the municipality is actually responsible.[20] Thus, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is

---

[16] Pembaur v. City of Cincinnati, 475 U.S. 469, 480-481, 106 S.Ct. 1292 (1986).

[17] Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692, 98 S.Ct. 2018, 2037 (1978).

[18] Id. at 692, 98 S.Ct. at 2036.

[19] Pembaur, 475 U.S. at 480-481.

[20] Id.

4

responsible under § 1983."[21]  "Official policy" often refers to formal rules or understandings–often but not always committed to writing–that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time.[22]  Therefore, plaintiffs must demonstrate that the municipality was the "moving force" behind the injury alleged.[23]

Plaintiffs maintain the Policies and Procedures Manual[24] for the Lake Charles Police Department was either vague, or the officers were not sufficiently trained on the policies such that defendant O'Rourke felt free to use his Taser upon Deshotels even though specifically prohibited from doing so by several provisions of the Policies and Procedures Manual ("Manual").[25]  The Manual provides the following as to when a Taser should be deployed:

> . . . The Taser may be used to control a violent or potentially violent suspect when lethal force does not appear to be justified or attempts to subdue the suspect by conventional tactics have been , or will likely be, ineffective in the situation at hand. The Taser X26 may only be used by authorized and trained personnel in accordance with the use-of-force policy and additional guidelines established herein.[26]

As to forbidden uses, the Manual provides as follows:

- In a punitive or coercive manner.
- On a handcuffed or secured prisoner, absent of overtly combative behavior that cannot be reasonably dealt with in any other less intrusive fashion.
- On any suspect who does not demonstrate an overt intention to use

---

[21]  Monell, 436 U.S. at 694, 98 S.Ct. at 2038.

[22]  Pembaur, 475 U.S. at 480-481.

[23]  Id.

[24]  The Manual describes the use of and/or forbidden use of a Taser.

[25]  Plaintiffs' exhibit 29, *Order O-13*.

[26]  Id. at p. 1.

5

violence or force against the officer or another person. . . .[27]

Plaintiff further submits the deposition testimony of Officer Morgan who testified that the Manual did not apply to the use of a Taser in drive stun mode, the mode used on Deshotels. Plaintiffs submit that Defendants' law enforcement expert, George Armbruster, disputes Morgan's claims. Armbruster testified in his deposition that the Taser policy in *Order O-13* applies to the use of a Taser in any mode, including drive stun mode.[28] Plaintiffs argue that there is a lack of specificity in the policy and order, or a lack of proper training because O'Rourke freely tasered Deshotels in a punitive or coercive manner and in the absence of "overtly combative behavior." Specifically, plaintiffs suggest that O'Rourke used his Taser on a suspect who had not demonstrated "an overt intention to use violence or force against the officer or another person." Hence, plaintiffs argue that a genuine issue of material fact presents for trial as to whether LCPD Policy Order O-13 actually permits or condones the use of a Taser in drive stun mode under the circumstances presented.

Defendants rebut and rely also on the testimony of their expert, Armbruster, who concluded that Deshotels demonstrated an overt intention to use violence or force against an officer.[29] Thus, based on their expert's deposition testimony, defendants submit that O'Rourke was justified in deploying the Taser because of Deshotel's conduct while resisting the arrest.

The court finds that the Taser policy is not vague and plaintiffs have failed to present

---

[27] Id. at p. 4, ¶ 6.

[28] Plaintiffs' exhibit 26, depo. of George Armbruster, p. 62.

[29] Defendants' exhibit P, Armbruster depo. p. 65, line 2 p. 66, line 13.

summary judgment evidence to create a genuine issue for trial as to the lack of or improper training of the police officers. Moreover, the policies and/or customs of the LCPD were not the moving force behind plaintiffs' alleged violation of a constitutional right. Accordingly, the § 1983 claims made by plaintiffs against the City will be dismissed.

*42 U.S.C. § 1983 claims individual claims against the LCPD's officers*

Title 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or caused to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.

The first inquiry in any §1983 suit is to isolate the precise constitutional violation with which the defendant is charged.[30] The validity of the claim is then judged by reference to the specific constitutional standard which governs that right.[31] Plaintiffs allege that the defendant police officers used excessive force against Dr. Deshotels while making the arrest and detaining him, and that they were deliberately indifferent to his medical needs while in their custody.

*Qualified immunity*

Defendants maintain they are entitled to qualified immunity because their conduct was reasonable under the circumstances. The affirmative defense of qualified immunity from suit is available to all government officials, including police officers in § 1983 actions.[32] The burden of

---

[30] <u>Baker v. McCollan,</u> 443 U.S. 137, 140, 99 S.Ct. 2689, 2692 (1979).

[31] <u>Graham v. Connor,</u> 490 U.S. 386, 109 S.Ct. 1865 (1989).

[32] <u>England v. Hendricks,</u> 880 F.2d 281 (10th Cir. 1989).

proof of qualified immunity lies with the official asserting it.[33] A public official is entitled to be shielded from liability for civil damages under the provisions of 42 U.S.C. § 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.[34]

Qualified immunity is an "entitlement not to stand trial or face the other burdens of litigation."[35] The two step analysis of qualified immunity requires us to determine whether plaintiffs have alleged the violation of a constitutional right and whether such right was clearly established.[36] The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.[37] Although "the *Saucier* rule prescribes the sequence in which the issues must be discussed by a court in its opinion, the rule does not-and obviously cannot-specify the sequence in which judges reach their conclusion in their own internal thought processes."[38] Therefore, a court can decide that there was no violation of a clearly established law before deciding whether the relevant facts make out a constitutional question.[39] Accordingly, the court may exercise its sound discretion in deciding which of the two prongs in *Saucier* should be addressed first in light of the circumstances in the particular

---

[33] Houghton v. South, 965 F.2d 1532 (9th Cir. 1992).

[34] Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727 (1982).

[35] Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985).

[36] Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151 (2001).

[37] Id., citing Wilson v. Layne, 526 U.S. 603, 615, 119 S.Ct. 1692 (1999).

[38] Pearson v. Callahan, – U.S. – , 77, 129 S.Ct. 808, 820 (2009).

[39] Id.

case at hand.[40]

Plaintiffs have alleged two constitutional violations: excessive force, (Fourth Amendment) and deliberate indifference to medical needs (Fourteenth Amendment). However, even if this court were to hold that the officers violated the Fourth and/or Fourteenth Amendment, they could still be granted immunity for a reasonable mistake as to the legality of their actions, and qualified immunity can apply in the event the mistaken belief was reasonable.[41]

*Excessive force claims*

An excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, and is more properly characterized as one invoking the protections of the Fourth Amendment.[42] The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person. A "seizure" triggering the Fourth Amendment's protections occurs only when government actors have, "by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen."[43] The use of force is excessive under objective standards of reasonableness.[44]

Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of " 'the nature and the quality of the intrusion on the individuals' Fourth Amendment interests "against the countervailing governmental interests at

---

[40] Id.

[41] Id. citing Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034 (1987).

[42] Id.

[43] Terry v. Ohio, 392 U.S. 1, 19, n.16, 88 S.Ct. 1868, 1879, n.16 (1968).

[44] Id.

9

stake."[45] The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hind sight.[46] The "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.[47] The court must consider the circumstances of each particular case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight.[48]

As previously stated, Officers Thacker, McCauley and Moss were not present at the scene until well after Deshotels was handcuffed, therefore, their actions are not relevant to plaintiffs' excessive force claims and any claims against these three defendants in their individual capacity as to excessive force will be dismissed.

Officer Pittman was the first officer to respond to the 911 call. Pittman, with the assistance of the homeowner/complainant tackled Deshotels after he attempted to escape and/or evade arrest. Shortly thereafter, Officers O'Rourke and Morgan arrived. Morgan crossed and folded Deshotels' legs behind him to prevent him from kicking. O'Rourke tasered Deshotels twice before he was subdued. Plaintiffs maintain that the tasering was unnecessary because at that particular time, there were five (5) officers present to handcuff him. In an attempt to create a genuine issue of material fact,

---

[45] United States v. Place, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642 (1983).

[46] Terry, 392 U.S. at 20-22, 88 S.Ct. at 1879-1881.

[47] See Scott v. United States, 436 U.S. 128, 137-139, 98 S.Ct. 1717 (1978).

[48] Graham, 490 U.S. at 196, 109 S.Ct. at 1872.

Plaintiffs submit as summary judgment evidence the video and audio recording of the Tasering device.[49]

Plaintiffs comment about hearing an officer chuckle prior to the Taser being applied to Deshotels. Defendants remark that the video and audio recording, which has limited clarity, includes recordings made before, during and after the incident. For instance, the video/audio footage which reveals O'Rourke's face is time stamped at 00:12:150 – two hours and fifteen minutes before the audio/video confrontation between the police officers and Deshotels.

Plaintiffs comment that the Taser warnings were being made contemporaneously with the actual Tasering. Defendants remark that even though the audio during the encounter with Deshotels is unclear, it unequivocally reflects strong law enforcement directives to "stop resisting." Defendants also submit the deposition of bystander, Brady Hendrix, who testified that Deshotels was fighting with police as he refused to surrender his arms. Hendrix testified that he heard an officer tell Deshotels to quit resisting arrest or he would be tased immediately prior to Hendrix seeing a Taser applied near Deshotels' right shoulder.[50]

Plaintiffs submit Lake Charles Police Department general Order A-19[51] which delineates the policies of the Lake Charles Police Office regarding use of force. With regard to levels of force and control authorized for LCPD officers, Order A-19 provides as follows:

> B.      Levels of Force and Control
>
>         1.      An officer is authorized to use only the necessary and

---

[49]  Plaintiffs' exhibit 32, Taser DVD.

[50]  Defendants exhibit I, depo. of Brady Hendrix, p. 28, line 23, p. 30, line 25.

[51]  Plaintiffs' exhibit 28, Order A-19.

11

> reasonable amount of force to affect an arrest and deter any
> aggression or resistance on the part of the subject being
> arrested. The officer's actions will be guided by the
> offender's level of resistance as identified above.[52]

"Use of Force" is defined as "any level of physical action used to control or limit the movement of another person."[53] "Resistance" is defined as "the opposition to an officer's control by a subject who is being placed under arrest or is already under arrest against an officer acting in his official capacity. Resistance may be verbal or physical."[54] Order A-19 provides the procedure officers are to follow when applying "use of force" as follows:

II.     **The Use of Force Continuum**

>     A.     Generally, there are four times an officer is justified in using physical
>     control methods. These are:
>
>         1.     To prevent a forcible offense against another person or his
>         property;
>         2.     To protect the officer or another from injury or death;
>         3.     To protect a subject from injuring himself; and,
>         4.     To overcome resistance when effecting a lawful arrest.[55]

Plaintiffs remark that the officers agree, and the Use of Force Report[56] confirms, that the level of resistance offered by Deshotels was, at most, "defensive resistance," which is defined by Order A-

---

[52] Id. at p. 4.

[53] Id. at p. 1.

[54] Id. at p. 2.

[55] Id. at p. 2.

[56] Plaintiffs' exhibit 15 attached to memorandum in opposition to motion for summary judgment filed by Sheriff defendants (R. #68). The report notes that the action was "EMPTY HAND DEFENSIVE RESISTANCE".

19 as follows:

### 4. Defensive Resistance

Quite often, officers find themselves confronting a subject who is physically resisting the officer's attempt to control the subject by directing overt, defensive, physical actions. With this level of resistance, the offender attempts to push or pull away in a manner that does not allow the officer to establish control. However, the subject never attempts to strike the officer.[57]

Plaintiffs maintain that use of the Taser under the circumstances violated not only Deshotels' rights under the U.S. Constitution, but LCPD's own departmental policy regarding the Taser's use. Plaintiffs argue that the Tasing was clearly excessive and objectively unreasonable in response to the facts and circumstances confronting the officers.

As to the use of a Taser, Order A-19 provides the following:

Taser

The Taser is a stunning device that delivers an electrical charge which temporarily disables a subject without causing permanent injury. The charge comes from two darts which when fired from the device, will normally render a hostile person immobile. The Taser is deployed as an additional police tool and is not intended to replace firearms, control holds, or other self-defense techniques. The Taser may be used:

- To control a violent or potentially violent suspect when lethal force does not appear to be justified and/or necessary; or,
- Attempts to subdue the suspect by other conventional tactics have been, or will likely be, ineffective in the situation at hand; or,
- There is reasonable expectation that it will be unsafe for officers to approach within range of the suspect.[58]

There is no dispute that Deshotels first attempted to evade arrest by running away. After verbal

---

[57] Plaintiffs' exhibit 28, p. 4.

[58] Id. at p. 6-7.

directives by officers to stop resisting arrest, Deshotels continued to disobey those directives. Several officers struggled with Deshotels, but were unable to subdue and place handcuffs on him as he lay face down on the ground.

A review of the audio/video evidence, the 911 call recording, the LCPD policies and the deposition testimony convinces the court that there are factual issues that must decided by a jury as to whether or not the use of the Taser was reasonable. The Manual specifically forbids the use of the Taser in instances where a suspect "does not demonstrate an overt intention to use violence or force against the officer or another person." There is no evidence that Deshotels was using or attempting to use force against the officers or another person. The court finds plaintiffs have submitted sufficient summary judgment evidence to create a genuine issue of material fact for trial as to whether the conduct of Officers O'Rourke, Morgan and Pittman was reasonable under the circumstances. As such, the § 1983 claims of excessive force against Officers O'Rourke, Morgan and Pittment in their individual capacities will not be dismissed.

*State law claims against the City and its officers*

Plaintiffs maintain that the City is liable under respondeat superior for the damages caused by the acts of its police officers, namely Officers Pittman, O'Rourke, Morgan, Thacker, McCauley and Moss. The employer of a police officer is liable for the torts committed by the officer during the performance of his official duties.[59]

The standard negligence analysis in determining whether to impose liability under Louisiana Civil Code article 2315 is the duty/risk analysis.[60] In order for liability to attach, a plaintiff must

---

[59] _Jenkins v. Jefferson Parish Sheriff's Office,_ 402 So.2d 669 (La.1981).

[60] _Mathieu v. Imperial Toy Corp.,_ 646 So.2d 318 (1994).

14

prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element), (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element), (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact- element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element).[61]

An excessive force claim in Louisiana is premised largely on Louisiana Code of Criminal Procedure article 220.[62] Excessive force can be found when an officer makes a lawful arrest.[63] "The use of force when necessary to make an arrest is a legitimate police function."[64] However, "[w]hether the force used is reasonable depends upon the totality of the facts and circumstances in each case."[65] "A court must evaluate the officers' actions against those of ordinary, prudent and reasonable men placed in the same position as the officers and with the same knowledge as the officers."[66]

Factors to be considered are: (1) the character of the arrestee; (2) the risks and dangers faced by the officers; (3) the nature of the offense; (4) the probability of the arrestee's escape; (5) the

---

[61] Id., at 322.

[62] LSA-C.Cr.P.Art. 220 provides as follows:

A person shall submit peaceably to a lawful arrest. The person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained.

[63] Kyle v. City of New Orleans, 353 So.2d 969 (1977).

[64] Kyle, 353 So.2d at 972.

[65] Id., at 973.

[66] Id.

existence of alternative methods of arrest; (6) the physical size, strength, and weaponry of the officers as compared to the arrestee; and (7) the exigencies of the moment.[67]

In evaluating an officer's conduct under a given set of circumstances, the officer is not required to use the "best" or a "better" method of approach when arresting a suspect, rather the officer must choose a course of action which is reasonable.[68] In *Matheiu, supra,* the Louisiana Supreme Court relied on the reasoning found in *Scott v. Henrich,*[69] as follows:

> Requiring officers to find and choose the least intrusive alternative would require them to exercise superhuman judgment. In the heat of battle with lives potentially in the balance, an officer would not be able to rely on training and common sense to decide what would best accomplish his mission. Instead, he would need to ascertain the least intrusive alternative (an inherently SUBJECTIVE determination) and choose that option and that option only. Imposing such a requirement would inevitably induce tentativeness by officers, and thus deter police from protecting the public and themselves. It would also entangle the courts in endless second-guessing of police decisions made under stress and subject to the exigencies of the moment. Officers thus need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct we identify as reasonable.[70]

Officers Thacker, McCauley and Moss were not present at the scene until well after Deshotels was handcuffed, therefore, their actions are not relevant to plaintiffs' excessive force claims, and any state law claims against these three defendants as to excessive force will be dismissed.

As noted above concerning the excessive force claims under § 1983, and considering the factors set forth in *Kyle, supra,* the court finds that plaintiffs have submitted sufficient summary

---

[67] Id., at 973.

[68] Matheiu, *supra.*

[69] 39 F.3d 912 (9th Cir. (Mont.) 1994).

[70] Id., at 326.

judgment evidence to create a genuine issue of material fact as to whether or not the conduct of the police officers, Pittman, O'Rourke and Morgan, was reasonable under the circumstances. Accordingly, the court will not dismiss the state law negligence claims against the City and also Officers Pittman, Morgan and O'Rourke in their individual capacity as to excessive force.

*Deliberate indifference to medical needs*

Plaintiffs allege state law negligence claims as well as § 1983 claims for deliberate indifference to the medical needs of Deshotels. Defendants, McCauley, Moss and Thacker seek dismissal of the state law negligence claims and § 1983 claims for deliberate indifference maintaining that they actively attempted to provide the necessary medical assistance. The other officers maintain that because McCauley and Moss rendered first aid, there was nothing else they could do medically for Deshotels.

The Court is concerned about the inconsistencies in the Officers' depositions, including the Sheriff department deputies, and the EMT's depositions that responded to the 911 call.[71] For instance, when the EMT's arrived at the scene, Deshotels was lying supine on his back, suffocating in his own vomit. We cannot at this juncture of the proceedings made a credibility determination as to the facts of the case. The inconsistencies in the condition of Deshotels and the lack of assistance provided by the police officers when the EMTs arrived creates a genuine issue of material fact for trial as to whether or not the LCPD officers provided adequate medical assistance and/or were deliberately indifferent to the medical needs of Deshotels. At trial it may be proven that specifically, the assistance of Officers McCauley and Moss, was adequate and they will be exonerated. However, because of the inconsistent testimony of the EMT's and the police officers, these inconsistencies can only be determined by a trier of fact. For the same reasons given in our previous Memorandum Ruling dated

---

[71] See the Memorandum Ruling dated March 8, 2010. R. #69.

March 8, 2010,[72] and applying the same analysis to both the state law and § 1983 claims for deliberate indifference to medical needs, the claims made by plaintiffs against the defendant police officers will not be dismissed.

## CONCLUSION

For the reasons set forth above, the motion for summary judgment will be granted in part and denied in part. The motion will be granted to the extent that the § 1983 claims against the City of Lake Charles as to the vagueness of the policies or training of the officers will be dismissed with prejudice; the motion will be granted to the extent that the § 1983 claims of excessive force against the individual defendant Officers, McCauley , Thacker, and Moss will be dismissed with prejudice; the motion will be granted to the extent that the state law excessive force claims against Officers, McCauley, Thacker and Moss will be dismissed with prejudice; otherwise the motion is denied.

The court determines that there is no just reason for delay and will direct entry of final judgment under rule 54(b) of the Federal Rules of Civil Procedure.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 1ˢᵗ day of July, 2010.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[72] R. #69.