RECEIVED
OCT 27 2010
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| ANN DESHOTELS, ET AL | : | DOCKET NO. 08-1378 |
|---|---|---|
| VS. | : | JUDGE TRIMBLE |
| GREGORY PAUL NORSWORTHY, ET AL | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is a "Motion for Summary Judgment" (R. #113) filed by defendants, City of Lake Charles ("City"), Kevin O'Rourke ("O'Rourke"), Jeff Morgan ("Morgan"), Jeff Pittman ("Pittman"), John Thacker ("Thacker"), Robert McCauley ("McCauley"), Larry Moss ("Moss") and St. Paul Fire & Marine Insurance Company ("St. Paul"). Movers seek summary judgment in their favor pursuant to Federal Rule of Civil Procedure 56 on the grounds that there is no genuine issue of material fact.

## FACTUAL SUMMARY

A recitation of the necessary facts were stated by this court in the Memorandum Ruling dated July 1, 2010.[1]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the

---

[1] R. #98.

moving party is entitled to judgment as a matter of law."[2] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[3] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[4] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[5] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[6] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[7] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[8] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[9]

---

[2] Fed. R.Civ. P. 56(c).

[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[4] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[5] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

[6] Anderson, 477 U.S. at 249.

[7] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[8] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[9] Anderson, 477 U.S. at 249-50.

## LAW AND ANALYSIS

In their motion for summary judgment, defendants seek the following relief. Officer O'Rourke seeks to have the claims of excessive force dismissed against him because the tasering did not cause Dr. Deshotels' death. Officers Pittman and Morgan seek to have the excessive force claims dismissed because of the lack of causation and also because their conduct was reasonable and appropriate. Defendant Officers Thacker, McCauley and Moss seek to have the claims regarding inappropriate medical assistance dismissed because they provided Dr. Deshotels the appropriate medical assistance.

In our memorandum ruling dated July 1, 2010, we stated that [a] review of the audio/video evidence, the 911 call recording, the LCPD policies and the deposition testimony convinces the court that there are factual issues that must [be] decided by a jury as to whether or not the use of the Taser was reasonable."[10] In so doing, we held that plaintiffs had submitted sufficient summary judgment evidence to create a genuine issue of material fact for trial as to whether the conduct of Officers O'Rourke, Morgan and Pittman was reasonable under the circumstances. Based on the manner in which these defendants submitted their motion, that ruling was based on the concerted conduct of these three Lake Charles Police Department Officers. Thus, we did not consider dismissal as to each officers' independent and/or individual conduct. The instant motion now asks us to look at the individual conduct of these officers and seeks their dismissal based on the fact that the tasering of Dr. Deshotels did not cause his death and based on the assertion that Officers Pittman and Morgan's conduct was reasonable.

The excessive force claims against defendants, McCauley, Thacker and Moss were dismissed

---

[10] R. #98, p. 14.

3

because these particular officers appeared on the scene after Dr. Deshotels was subdued and handcuffed, therefore their actions were not relevant to plaintiffs' excessive force claims.[11]

*Officer O'Rourke*

Defendant, O'Rourke, the police officer who tasered Dr. Deshotels, maintains that the claims of excessive force asserted against him should be dismissed because his conduct cannot be a legal cause of the injury or harm. In other words, even if it is determined that the tasering was excessive, it was not the "legal cause" of Dr. Deshotels' death.

To state a claims of excessive force in violation of the Constitution, a plaintiff must allege (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable."[12]

O'Rourke submits as summary judgment evidence, the deposition testimony of plaintiffs' expert, Dr. Collie Trant, who testified that O'Rourke's Taser did not kill Dr. Deshotels.[13] O'Rourke relies solely on this testimony as the basis for having the excessive force claim dismissed. O'Rourke argues that this testimony negates the second element of § 1983 liability, and therefore, as a matter of law, he cannot be held liable. O'Rourke also relies on Smith v. Louisiana State Police,[14] wherein the court found in favor of a defendant officer who had tasered a suspect twice because plaintiff had failed to prove that said tasering caused the suspect's death. In that case, the Parish Coroner opined that the suspect died of excited delirium and that the taser did not cause his death. However, as

---

[11] Id. p. 10.

[12] Bazan v. Hidalgo County, 246 F.3d 481, 487 (5th Cir. 2001).

[13] Defendants' exhibit A, p. 106, lines 19-25 and p. 107, lines 1-9.

[14] 2009 WL 411553 (E.D. La. 2009).

noted by plaintiffs, the judge in the Smith case remarked that plaintiffs had twice failed to file any opposition to defendants' motion to create a genuine issue of material fact for trial.

Plaintiffs, on the other hand, maintain that where multiple causes are present, a defendant's conduct is considered a cause-in-fact when it is a "substantial factor" in generating a plaintiff's harm.[15] Plaintiff relies on the deposition testimony of Dr. Trant to establish that the tasering contributed to, or accelerated the asphyxiation process. Dr. Trant testified as follows:

Q. No, but you say here the extreme pain would definitely add to the confusion as well as make it even more difficult to breathe while the taser's being applied.

A. Yeah, even if for five seconds.

Q. So, that would affect his breathing mechanism?

A. Yeah, but for five seconds. You know, basically being tasered contracts all the muscles and is extremely painful. So, in addition to not being able to expand his chest because of the weight on his back, because of the compression of the abdomen, because of that point pressure caused by his arms under his chest, because of his face being planted in the ground. And so, then you cause this severe pain and the inability to use those muscles at all for five seconds, it would just add to the confusion, but have nothing to do electrically as far as the taser's effect on the heart or anything.[16]

Q. Well, and maybe what I'm trying to understand is, I guess when I envision someone dying from asphyxiation, that this is something that occurs by a continuous blockage

---

[15] Citing Westchester Fire Ins. Co. v. Haspel-Kansas Investment Partnership, 342 F.3d 416, 421 (5th Cir. 2003); Poindexter v. U.S. ex rel Corps. of Engineers, 568 F.Supp.2d 729, 738 (W.D. La. 2008).

[16] Plaintiffs' exhibit 33, Trant depo. p. 79, lines 14-25, p. 80, lines 1-8.

5

of air to the - -

A. Or cumulative. See, you got one cause that doesn't quite do it. Then you got another cause that adds to it.

Q. Yeah, but what I'm saying is, you have to have continuous stopping air to the brain for what, a minute, two minutes, to cause death? I guess what I'm trying to ask you is this. You've got all these different - -

A. Um-hum (yes).

Q. - - findings. And I'm not really hearing - - I don't think any of these happened all simultaneously.

A. Un-hun (no), no, it's one behind another.[17]

Plaintiffs further submit the deposition testimony of Calcasieu Parish Coroner, Dr. Terry Welke as follows:

A. So what happens is, he's excited, to some extent, and then there's an altercation with a homeowner, so that further excites him; just like if you and I were to wrestle, I'm sure that, as time progresses, I'm sure that you would get a little upset, as would I, and then, in an attempt to escape or whatever happened, the adrenaline rush, I guess, if you will, intensifies to some extent, and then as he's doing whatever he's doing, then subsequently obtained by the law enforcement agents, struggle with some more, thereby, the adrenaline rush may intensify, to some extent, and then somewhere along the line, he gets Tased, and - - which further caused an intensification of the adrenaline rush, and then as time progresses, within a minute

---

[17] Id., p. 101, lines 1-23.

or two or whatever the case may be, he has some sort of a heart irregularity that ends up causing his demise.[18]

Plaintiffs also submit the testimony of Dr. James Traylor, a forensic pathologist retained by defendant, Mr. Norsworthy, who opined that Dr. Deshotels' death was primarily caused by mechanical asphyxia from external compression. Dr. Traylor testified as follows:

A. I think that - - that there's a combination of two things: I think there is a component of excited delirium. The primary thing, I think, is mechanical asphyxia, and I think there is a component of excited delirium associated with that.

Q. Primary cause would be mechanical asphyxia?

A. Correct.

Q. And the contributing factor would be excited delirium?

A. Yes, I think they're - - There's a component combined of each one to - - that results finally in death.

Q. What - - what was the mechanism of the mechanical asphyxia?

A. The mechanism of the mechanical asphyxia is the law enforcement officers wrestling with him trying to get him under control for a period of time.

Q. You mean like piling on him while he's immobilized?

A. Well, you know, he's - - he's - - I don't remember his exact weight, but he's face down. They're trying to, you know - - He's struggling. He's face down. Law enforcement is trying to, you know, get him under control. Whether someone's on his back or not I would suspect that they probably are. They're probably - - You

---

[18] Plaintiffs' exhibit 13 (R. #68-15), Dr. Terry Welke depo. p. 42-43.

7

know, they're trying to pull his arms out from underneath him. One of them is trying to control his feet and - -

Q. Which puts more weight on hi - - on his upper - -

A. Well, if he's on his belly and he's kind of obese, which the photographs show that he is, it displaces the abdominal viscera up - - in and up which decreases your ability to have full respiratory excursion. So that for a prolonged period of time, combined with your body's need for a greater amount of oxygen because of the struggle before they get this guy under control . . . .

Q. So his ability to inflate his lungs were - - was compromised by position and weight on him?

A. Well, that's a whole - - that's a whole different thing. You can have positional asphyxia without having a mechanical portion, but you have mechanical asphyxia because someone or something is on you and allowing you not to be able to breath; whereas positional asphyxia doesn't need to have anybody involved. . . .

Q. Mechanical asphyxia is when you're being compressed by external - -

A. Yes. Whether by object or people or - - Yes.

Q. And that compromises the person's ability to get . . . .[19]

Plaintiffs argue that even though the experts have not determined that pain from the multiple taserings was the sole and independent cause of death, they do agree that the taserings contributed to or accelerated the process which ultimately caused Dr. Deshotels' death. Considering the summary judgment evidence submitted by plaintiffs, the court finds that sufficient evidence has

---

[19] Plaintiffs' exhibit 34, Dr. James Traylor depo. pp. 56-57.

8

been submitted to create a genuine issue of fact for trial as to whether or not the taserings caused or contributed to Dr. Deshotels' death.

*Officers Pittman and Morgan*

Defendant Officers Pittman and Morgan maintain that they are in the same position as CPSO Deputies Miller and Marshall based on their assumption that the tasering was not the sole sause of Dr. Deshotels' death. In our Memorandum Ruling dated March 8, 2010, we held that the actions of Miller and Marshall did not constitute excessive force. However, since that ruling, we ordered plaintiffs to file an amended complaint to allege with clarity that they were suing the defendants in their individual and personal capacities.[20] Plaintiffs filed a third amended complaint alleging that the defendant officers and deputies were being sued in their individual and personal capacities.[21] As such, the court considers the individual claims against these officers, including the excessive force claims as viable claims.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.[22] Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.[23] "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they

---

[20] R. #89.

[21] R. #94.

[22] Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982).

[23] Anderson v. Creighton, 483 U.S. 635, 640, n. 2, 107 S.Ct. 3034 (1987).

9

perform their duties reasonably".[24] The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."[25] The two-step analysis in Saucier v. Katy,[26] requires the court to decide (1) whether the facts make out a violation of a constitutional right, and (2) whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.[27] The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.[28]

Judges are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.[29]

Defendants, Pittman and Morgan, argue that the law of the case is that because these officers' only conduct was to hold Dr. Deshotels down in order for him to be handcuffed, they should be dismissed.

An excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, and is more properly characterized as one invoking the protections of the Fourth

---

[24] Pearson v. Callahan, 129 S.Ct. 808, 815(2009).

[25] Groh v. Ramirez, 540 U.S. 551, 567, 124 S.Ct. 1284 (2004).

[26] 533 U.S. 194, 121 S.Ct. 2151 (2001).

[27] Id.

[28] Id. citing Wilson v. Layne, 526 U.S. 603, 615, 119 S.Ct. 1692 (1999).

[29] Pearson, 129 S.Ct. at 818.

Amendment.[30] The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person. A "seizure" triggering the Fourth Amendment's protections occurs only when government actors have, "by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen."[31] The use of force is excessive under objective standards of reasonableness.[32]

Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of " 'the nature and the quality of the intrusion on the individual's Fourth Amendment interests "against the countervailing governmental interests at stake."[33] The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hind sight.[34] The "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable"in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.[35] The court must consider the circumstances of each particular case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest

---

[30] Id.

[31] Terry v. Ohio, 392 U.S. 1, 19, n.16, 88 S.Ct. 1868, 1879, n.16 (1968).

[32] Id.

[33] United States v. Place, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642 (1983).

[34] Terry, 392 U.S. at 20-22, 88 S.Ct. at 1879-1881.

[35] See Scott v. United States, 436 U.S. 128, 137-139, 98 S.Ct. 1717 (1978).

or attempting to evade arrest by flight.[36]

Plaintiffs note and rely upon this court's earlier ruling that "plaintiffs had submitted sufficient summary judgment evidence to create a genuine issue of material fact for trial as to whether the conduct of Officer O'Rourke, Morgan and Pittman was reasonable under the circumstances.[37]" Plaintiffs contend that defendants have submitted no additional evidence to warrant revisiting or reversing the earlier ruling. However, as previously noted, and based on how the initial motion for summary judgment was presented, the court only considered these police officers' concerted conduct, as opposed to each of their individual conduct.

Based on the evidence submitted by the parties, Officer Pittman was the first officer to arrive. He was aware that Dr. Deshotels was a burglary suspect. Upon his arrival, Mr. Norsworthy had already apprehended Dr. Deshotels, but Dr. Deshotels rose to his feet and started running toward Nelson Road.[38] Officer Pittman, with the help of Norsworthy, chased Dr. Deshotels and caused him to fall to the ground on his stomach.[39] Officer Pittman positioned himself with his knees on either side of Dr. Deshotels and straddled him on his lower back.[40] Dr. Deshotels kept his hands and arms underneath his torso area, refusing to be handcuffed.[41] Sheriff Deputies Marshall and Miller then

---

[36] Graham, 490 U.S. at 196, 109 S.Ct. at 1872.

[37] Memorandum Ruling dated July 1, 2010, R. #98, p. 14.

[38] Sheriff exhibit E, attached to motion for summary judgment (R. #62), Pittman depo. pp. 47-51.

[39] Plaintiffs' exhibit 7, attached to opposition to motion for summary judgment (R. #68), pp. 51, 57-58.

[40] Id. p. 58, line 24. p. 59, line 1.

[41] Id. p. 59, lines 17-20, p. 61.

arrived,[42] followed by Officers Morgan and O'Rourke. Because Dr. Deshotels was kicking his legs, Officer Morgan grasped one of his legs and folded it over the other.[43] Eventually, after being tasered twice by Officer O'Rourke, Dr. Deshotels was subdued and handcuffed.

The court finds that Officer Pittman's conduct which included chasing Dr. Deshotels, causing him to fall, and straddling him to place the handcuffs on him was not unreasonable, and furthermore, cannot be said to be unlawful in the situation he confronted.[44] Likewise, when Officer Morgan arrived and observed the struggle and Dr. Deshotels kicking, the officer's act of folding Dr. Deshotels' leg was not unreasonable, nor unlawful in that particular situation. Therefore, because Officers Pittman and Morgan's conduct was reasonable and did not violate a clearly established law, they are entitled to summary judgment based on qualified immunity.[45]

Plaintiffs have also alleged state law claims against Officers Morgan and Pittman. An excessive force claim in Louisiana is premised largely on Louisiana Code of Criminal Procedure article 220.[46] Excessive force can be found when an officer makes a lawful arrest.[47] "The use of

---

[42] Sheriff's exhibit D, attached to motion for summary judgment (R. #62), Marshall depo. p. 41 - 42; Sheriff's exhibit F, attached to motion for summary judgment (R. #62), Miller depo. p. 32; Plaintiffs' exhibit 7, attached to opposition to motion for summary judgment (R. #69), Pittman depo. p. 64.

[43] Defendants' exhibit F, attached to motion for summary judgment (R. #82), Morgan depo. pp. 23-24.

[44] See Saucier v. Katy, 533 U.S. 194. 121 S.Ct. 2151 (2001).

[45] See Malley v. Briggs, 475 U.s. 335, 341, 106 S. Ct. 1092 (1986)(qualified immunity protests "all but the plainly incompetent or those who knowingly violate the law).

[46] LSA-C.Cr.P.Art. 220 provides as follows:

A person shall submit peaceably to a lawful arrest. The person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or

13

force when necessary to make an arrest is a legitimate police function."[48] However, "[w]hether the force used is reasonable depends upon the totality of the facts and circumstances in each case."[49] "A court must evaluate the officers' actions against those of ordinary, prudent and reasonable men placed in the same position as the officers and with the same knowledge as the officers."[50]

Factors to be considered are: (1) the character of the arrestee; (2) the risks and dangers faced by the officers; (3) the nature of the offense; (4) the probability of the arrestee's escape; (5) the existence of alternative methods of arrest; (6) the physical size, strength, and weaponry of the officers as compared to the arrestee; and (7) the exigencies of the moment.[51] The factors we considered when we analyzed the § 1983 claims are similar to the state law excessive force factors. Considering these factors, the Court finds that Officers Pittman and Morgan's limited actions in assisting with the arrest of Dr. Deshotels were reasonable under the circumstances.

*Officers Thacker, McCauley and Moss*

As to the excessive force claims, we affirm our previous holding that because these defendant officers arrived at the scene after Dr. Deshotels had been subdued and handcuffed, they cannot be held liable for any claims of excessive force. However, these defendants assert that they should be dismissed because they performed adequate medical care to Dr. Deshotels. This issue was addressed

---

threatened resistance of the person being arrested or detained.

[47] Kyle v. City of New Orleans, 353 So.2d 969 (1977).

[48] Kyle, 353 So.2d at 972.

[49] Id. at 973.

[50] Id.

[51] Id. at 973.

14

by the court in our memorandum ruling dated July 1, 2010.[52] The court reaffirms our earlier finding that because of the inconsistent testimony of the EMTs, police officers and deputies, a genuine issue of material fact for trial exists that can only be decided by a jury. Accordingly, with respect to all claims regarding inadequate medical assistance, the motion will be denied.

## CONCLUSION

Based on the foregoing, the motion for summary judgment will be granted in part and denied in part. The motion will be granted to the extent that the § 1983 and state law excessive force claims against Officers Pittman and Morgan will be dismissed; otherwise the motion will be denied. In effect, the court is holding that, as to the excessive force claims, it was only the tasering by Officer O'Rourke which might reasonably be interpreted by the trier of fact, in combination with the circumstances existing at the time of the tasering, to have constituted excessive force causally related to Dr. Deshotels' death. The court determines that there is no just reason for delay and will direct entry of final judgment under rule 54(b) of the Federal Rules of Civil Procedure.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 27th day of October, 2010.

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[52] R. #98.