RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
ALEXANDRIA, LOUISIANA
DATE _____ 1 / 4 / 11
BY _____ Q\Q√

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| ANN DESHOTELS, ET AL | : | DOCKET NO. 08-1378 |
| VS. | : | JUDGE TRIMBLE |
| GREGORY PAUL NORSWORTHY, ET AL | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a motion for summary judgment (R. #117) filed by defendants, Anthony

Mancuso, in his official capacity as the Sheriff of Calcasieu Parish and in his individual capacity,

Michael Marshall, Travis Miller and St. Paul Fire & Marine Insurance Company (in its capacity as

the insurer of the Calcasieu Parish Sheriff's Office), and a "Supplemental Motion for Summary

Judgment" (R. #130) wherein these defendants move to dismiss all claims of plaintiffs pursuant to

Federal Rule of Civil Procedure 56. Plaintiffs oppose the motions.

## FACTUAL STATEMENT

For a recitation of the facts, see the memorandum ruling dated March 8, 2010.[1]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories

and admissions on file, together with the affidavits, if any, when viewed in the light most favorable

to the non-moving party, indicate that there is no genuine issue as to any material fact and that the

---

[1] R. #69.

moving party is entitled to judgment as a matter of law."[2] A fact is "material" if its existence or

nonexistence "might affect the outcome of the suit under governing law."[3]   A dispute about a

material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the

non-moving party.[4] As to issues which the non-moving party has the burden of proof at trial, the

moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-

moving party's claim."[5]  Once the movant makes this showing, the burden shifts to the non-moving

party to set forth specific facts showing that there is a genuine issue for trial.[6]  The burden requires

more than mere allegations or denials of the adverse party's pleadings.  The non-moving party must

demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material

fact or law.[7]  There is no genuine issue of material fact if, viewing the evidence in the light most

favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[8]

If the evidence is merely colorable, or is not significantly probative, summary judgment may be

granted."[9]

---

[2]  Fed. R.Civ. P. 56(c).

[3]  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[4]  Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[5]  Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

[6]  Anderson, 477 U.S.  at 249.

[7]  Celotex Corp. v.  Catrett, 477 U.S. 317, 324 (1986).

[8]  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[9]  Anderson, 477 U.S. at 249-50.

## LAW AND ANALYSIS

Defendants, Sheriff Mancuso and Deputies Mike Marshall and Travis Miller maintain that all official capacity claims must be dismissed because plaintiffs failed to show that any Sheriff Department policy or custom caused any of Dr. Deshotels' constitutional rights to be violated. Sheriff Mancuso maintains that all individual capacity claims must be dismissed because there have been no individual claims made against him. Deputies Mike Marshall and Travis Miller maintain that they are entitled to qualified immunity because they conducted themselves in an objectively reasonable manner. Specifically, these defendants assert that plaintiffs' allegations that they failed to provide medical care, an alleged violation of Deshotels' constitutional rights is unsupported and contradicted by plaintiffs' own experts. Defendants further assert that they conducted themselves in an objectively reasonable manner and at no time exercised an unreasonable use of force when detaining Dr. Deshotels.

Defendants Marshall and Miller maintain that they are entitled to qualified immunity.

Title 42 U.S.C. § 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or caused to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.

The first inquiry in any §1983 suit is to isolate the precise constitutional violation in which the defendant is charged.[10]   The validity of the claim is then judged by reference to the specific

---

[10]  Baker v. McCollan, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692 (1979).

constitutional standard which governs that right.[11]  Plaintiffs allege that Defendants used excessive force against Dr. Deshotels while making the arrest and detaining him, and that they were deliberately indifferent to his medical needs while he was in their custody.

*Qualified immunity*

Qualified immunity is an "entitlement not to stand trial or face the other burdens of litigation."[12]  The two step analysis of qualified immunity requires the court to determine whether plaintiffs have alleged the violation of a constitutional right and whether such right was clearly established.[13]  The relevant, dispositive inquiry in determining if a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.[14]  Although "the Saucier rule prescribes the sequence in which the issues must be discussed by a court in its opinion, the rule does not-and obviously cannot-specify the sequence in which judges reach their conclusion  in their own internal thought processes."[15]  Therefore, a court can decide that there was no violation of a clearly established law before deciding whether the relevant facts make out a constitutional question.[16]  Hence, the court may exercise its sound discretion in deciding which of the two prongs in Saucier should be addressed first in light of the

---

[11]  Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865 (1989).

[12]  Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985).

[13]  Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151 (2001).

[14]  Id. citing Wilson v. Layne, 526 U.S. 603, 615, 119 S.Ct. 1692 (1999).

[15]  Pearson v. Callahan, – U.S. – ,129 S.Ct. 808, 820 (2009).

[16]  Id.

circumstances in the particular case at hand.[17]

In the <u>Saucier</u> case, the Supreme Court admonished the lower courts as follows: "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?[18]   "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."[19] "On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next sequential stop is to ask whether the right was clearly established. This inquiry, . . . must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable."[20]

*Excessive force*

An  excessive force claim arises in the context of an arrest or investigatory stop of a free citizen and is more properly characterized as one invoking the protections of the Fourth Amendment.[21] The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person.   A "seizure" triggering the Fourth Amendment's protections occurs only when government actors have, "by means of physical force

---

[17] <u>Id.</u>

[18] <u>Saucier,</u> 533 U.S. at 201.

[19] <u>Id.</u>

[20] <u>Id.</u>

[21] <u>Pearson,</u> 129 S.Ct.  at 820.

or show of authority, . . . in some way restrained the liberty of a citizen."[22] The use of force is excessive under objective standards of reasonableness.[23] Thus, the Fourth Amendment does not prohibit a police officer's use of reasonable force during an arrest.[24]

Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of " 'the nature and the quality of the intrusion on the individual's Fourth Amendment interests 'against the countervailing governmental interests at stake.' "[25] The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hind sight.[26] The "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.[27] The court must consider the circumstances of each particular case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight.[28]

---

[22] Terry v. Ohio, 392 U.S. 1, 19, n.16, 88 S.Ct. 1868, 1879, n.16 (1968).

[23] Id.

[24] Graham, 490 U.S. at 396 (1989)("the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it" citing Terry v. Ohio, 392 U.S. 1, 22-27 (1968)).

[25] United States v. Place, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642 (1983).

[26] Terry, 392 U.S. at 20-22, 88 S.Ct. at 1879-1881.

[27] See Scott v. United States, 436 U.S. 128, 137-139, 98 S.Ct. 1717 (1978).

[28] Graham, 490 U.S. at 396, 109 S.Ct. at 1872.

A court must be mindful that police officers are "forced to make split-second judgments–in circumstances that are tense, uncertain and rapidly evolving– about the amount of force that is necessary in a particular situation."[29]

Deputies Marshall and Miller had been dispatched and informed of a trespass and were also aware that the Lake Charles Police Department had been dispatched and were responding to a burglary. When they arrived at the scene, the deputies observed Dr. Deshotels actively struggling and resisting arrest.

In assisting with the detainment/arrest, Deputy Miller knelt on Dr. Deshotels' shoulder,[30] while Deputy Marshall attempted to reach under his torso to gain control of his right arm.[31] Plaintiffs remind the court of our ruling that there exists a genuine issue of fact as to the conduct of Lake Charles Police Officer O'Rourke, the officer who tasered Dr. Deshotels. Plaintiffs also note that O'Rourke "warned" of the tasering prior to its administration. Thus, plaintiffs argue that with that warning, Deputies Marshall and Miller should have prevented O'Rourke from tasering Dr. Deshotels. We disagree. As previously found in a prior ruling,[32] "the tasering occurred quickly with only seconds elapsing from the time O'Rourke warned of the tasering until the time he administered the tasering."[33] Due to the exigency of the situation, combined with Dr. Deshotels' repeated refusal

---

[29] Id. at 396.

[30] Plaintiffs' exhibit 5 (attached to memorandum in opposition to motion for summary judgment, R. #68-7), pp.46- 47.

[31] Id.

[32] R. #69.

[33] Id.

to cease resisting, and the short period of time between the taser warning and the actual tasering, the court concludes that Deputies Marshall and Miller's conduct was entirely reasonable and not a use of excessive force.

*Failure to render proper medical assistance*

Deputies Marshall and Miller suggest that their failure to render any aid to Dr. Deshotels was not deliberate indifference. They remark that they were the second and third officers on the scene. They further remark that they became aware that Dr. Deshotels was not breathing after he was hand cuffed and lifted from the ground. Deputies Marshall and Miller argue that because Lake Charles Police Department Officers Robert McCauley and Larry Moss began to provide medical assistance, there was nothing left for them to do.[34]

Plaintiffs submit that there is contradictory testimony as to exactly what type of medical aid was given Dr. Deshotels. For instance, Deputies Marshall and Miller, both testified that chest compressions were performed by one of the SRT (SWAT)officers after it was determined by one of them that Dr. Deshotels had no pulse.[35] However, defendant Officers McCauley and Thacker testified that no chest compressions were performed and that Dr. Deshotels had a pulse.[36]

Plaintiffs further note that none of the sheriff or police officers recalled that Dr. Deshotels had vomited, however, when paramedic Siefford arrived, Dr. Deshotels was lying on his back with

---

[34] Memorandum in support of motion for summary judgment, R. #117, p. 10.

[35] Plaintiffs' exhibit 5, Marshall depo. pp. 59-60(attached to plaintiffs' opposition to motion for summary judgment) R. #68; Plaintiffs' exhibit 6, Miller depo. pp. 40-43 (attached to plaintiffs' opposition to motion for summary judgment) R. #68.

[36] Plaintiffs' exhibit 8, McCauley depo. p. 50 (attached to plaintiffs' opposition to motion for summary judgment) R. #68; Plaintiffs' exhibit 11, depo. of Corporal Thacker, p. 47, (attached to plaintiffs' opposition to motion for summary judgment) R. #68.

vomit on both sides of his face, on the ground and filling Dr. Deshotels' mouth or airway.[37]

Plaintiffs also submit that there is contradictory evidence as to who and what type of assistance was rendered. According to paramedic Siefford, only one officer/deputy was attempting to pry open Dr. Deshotels' mouth with a white Bic ink pen which Siefford testified would have accomplished nothing toward establishing an airway.[38] Furthermore, EMT Siefford testified that he had to open Dr. Deshotels' clenched jaws which contradicts Officer McCauley's testimony had he had been holding Dr. Deshotels' tongue with a pen which allowed him to breath.[39]

Plaintiffs further complain that none of the officers did anything to remove the vomitus from Dr. Deshotels' airway, such as a finger sweep, which could have cleared his airway.[40] Plaintiffs also complain that the officers provided no information to assist the paramedics as to what caused the patient's status.[41]

Defendants Marshall and Miller argue that it was objectively reasonable for them to begin crowd control measures and to start gathering information as to the facts because three LCPD officers were "rendering medical aid to Dr. Deshotels that at the time appeared successful."[42] These defendants further argue that none of the officers and/or deputies saw Dr. Deshotels vomit or choke

---

[37] Plaintiffs' exhbit 11, Siefford depo. p. 28 (attached to plaintiffs' opposition to motion for summary judgment) R. #68.

[38] Id., p. 71.

[39] Id., p. 41.

[40] Id., p. 42.

[41] Id. pp. 24-25.

[42] Memorandum in support of motion for summary judgment, R. #117, p. 11.

on his vomit. Defendants Marshall and Miller take issue with the fact that EMT Siefford did not know exactly when Dr. Deshotels vomited and that when Dr. Deshotels vomited is irrelevant, because Deputies Marshall and Miller were performing other police work at the time.

Defendants submit the deposition testimony of plaintiffs' police practices expert as follows:

Q.    If there – if they have a confirmed a pulse and the suspect is breathing, what other medical attention would you expect law enforcement as a first responder in this particular case?

A.    None.[43]

Defendants submit that it is undisputed that when the EMTs arrived, Dr. Deshotels had a pulse, was breathing and had a heart beat. Defendants argue that this fact alone is enough to defeat plaintiffs' claims of deliberate indifference to medical needs of Dr. Deshotels. Defendants also rely on the testimony of plaintiffs' expert pathologist, Dr. Collie Trant as follows:

Q.    Okay. If you had been on the scene, I'm just asking you what medical attention would you have provided Dr. Deshotels?

A.    Well, being a doctor is not being a EMT. So, basically if I was a doctor on the scene by myself as an individual, there's not much I could've done other than basic CPR as far as, you know, try to clear the airway, make sure they've got a pulse, breathing. Do that for them if need be with CPR. But the bottom line is if I was a doctor on the scene and the ambulance people arrived, I would've probably told them, you know, you're gonna spend 30 minutes here, and the hospital is how many minutes away, you know, why don't you put him in the ambulance and get going immediately.

---

[43]  Defendants' exhibit P., depo. of D.P. Van Blaricom, p. 99, lines 14-18.

Q.    If someone's breathing, they have a pulse and a heartbeat, you would not perform

CPR, would you?

A.    Un-hun (no).[44]

Plaintiffs submit that Deputies Marshall and Miller were aware of the substantial risk of serious harm which presented to Dr. Deshotels considering that he had become unconscious, ceased breathing and had lost his pulse at some point after they arrested him. When Siefford arrived, he found Dr. Deshotels lying on his back, unresponsive, bradycardic, not breathing, his airway and mouth filled with vomit.[45] Plaintiffs have submitted evidence that Dr. Deshotels' vitals were not compatible with continued life when EMT Siefford arrived.[46] Thus, plaintiffs maintain that Deputies Marshall and Miller's lack of response to Dr. Deshotels, given the condition in which the EMTs found him upon their arrival, is both factually and legally "deliberate indifference" to his medical needs.

There is an abundance of contradictory testimony that has been given in this case and we find that, again, plaintiffs have presented sufficient evidence to create a genuine issue for trial as to these defendants' conduct concerning the medical assistance that was rendered to Dr. Deshotels. Thus, the question of whether or not these defendants are entitled to qualified immunity as to the claims made against them in their individual capacity will be answered by a jury.

*Official capacity claims*

---

[44] Defendants' exhibit Q, depo. of Dr. Collie Trant, p. 119, lines 20-25, p. 120, lines 1-17.

[45] Plaintiffs' exhibit 11, depo. of Sieffford, pp. 42-43, 52-57.

[46] Plaintiffs' exhibit 34, depo. of Dr. James Traylor, pp. 89-92, 102-103 (R. #122-4).

Defendants, Sheriff Mancuso and Deputies Marshall and Miller maintain that the official capacity claims against them must be dismissed because plaintiffs have failed to show that any Sheriff Department policy or custom caused any constitutional rights of Dr. Deshotels to be violated. The court agrees that plaintiffs have failed to submit summary judgment evidence to show that any Sheriff Department policy or custom caused a constitutional right of Dr. Deshotels to be violated. Accordingly, the official capacity claims against Sheriff Mancuso and Deputies Marshall and Miller will be dismissed.

*State law negligence claims*

Defendant Deputies, Marshall and Miller maintain that for the same reasons as to the § 1983 claims, they cannot be held liable under state law because their conduct was reasonable under the circumstances, citing Kyle v. City of New Orleans.[47] Likewise, Sheriff Mancuso maintains that he cannot be held vicariously liable.

As noted above the court has concluded that defendant Marshall and Miller's conduct in detaining and/or arresting Dr. Deshotels was not a use of excessive force. The same standard is used in analyzing a state law negligence claim, namely reasonable under the circumstances.[48] Accordingly, for the reasons set forth in our analysis of the § 1983 excessive force claims, these state law claims will also be dismissed.

As to the alleged breach of a duty to provide medical services to Dr. Deshotels, plaintiffs submit that the facts presented create a genuine issue of material fact for trial as to whether these

---

[47] 353 So.2d 969 (La.1977)(police officers owe a duty of reasonableness in using force to effect an arrest).

[48] Kyle v. City of New Orleans, 353 So.2d 969 (La.1977).

defendants breached their legal duty. "A police officer must exercise reasonable care to preserve the safety of the person in his custody. Additionally, a police officer owes a higher degree of care to an intoxicated person than to one who is more capable of caring for himself.[49] "It is the duty of an arresting officer to see that reasonable medical service is provided to his prisoner if and when his mental and/or physical condition discloses the need of such services.[50] As discussed earlier, there is contradicting testimony as to Dr. Deshotels' condition when the EMTs arrived and the type of medical assistance that was rendered. Accordingly, plaintiffs have submitted sufficient summary judgment evidence to create a genuine issue of material fact for trial as to whether defendants, Marshall and Miller breached their legal duty to provide reasonable care to Dr. Deshotels. Thus, the motion to dismiss the state law negligence claims for the alleged lack of reasonable medical care will be denied.

*Claims against Sheriff Tony Mancuso*

Defendant Sheriff Mancuso maintains that because there are no allegations made against him in his individual capacity, any such individual claims must be dismissed. The court notes that Sheriff Mancuso has been sued in both his individual and official capacity as the Sheriff of Calcasieu Parish.[51]

In Jenkins v. Jefferson Parish Sheriff's Office,[52] the court held that the Sheriff could not be

---

[49] Aycock v. City of Shreveport, 535 So.2d 1006 (La.App. 2d Cir. 1988) citing Abraham v. Maes, 430 So.2d 1099 (La.App. 4 th Cir. 1983).

[50] Cobb v. Jeansonne, 50 So.2d 100 (La.App. 2d Cir. 1951).

[51] ¶ 1(E) of the third amended complaint. R. # 94.

[52] 402 So.2d 669 (La.1981).

held liable individually for the torts of his deputies while in the course and scope of employment. In Jenkins, the court concluded that:

> the employment relationship which gives rise to delictual responsibility, the sheriff acts solely in his official capacity; he cannot be viewed as acting in a personal capacity in the employment relationship. Therefore, if the sheriff as an employer is to be held vicariously liable for the torts of his employee, he is liable only because he is sheriff and is only liable to the extent that he holds that office. He is not liable personally, and his personal funds and property cannot be subjected to execution of a judgment decreeing that liability . . . The sheriff should be no more personally responsible for the deputy's torts than he is . . . for the deputy's salary, or for the gasoline purchased for official vehicles. It is the officer who is responsible."[53]

Sheriff Mancuso submits that he was not at the scene of the incident, he did not assist in detaining Dr. Deshotels, and he did not participate in providing medical assistance (because he was not at the scene). Because there are no factual allegations against Sheriff Mancuso, he cannot be held liable personally or individually, and such claims against him will be dismissed. Furthermore, there are no allegations that a Sheriff's Department's policy or custom was the moving force behind the injury alleged,[54] thus as previously stated, Sheriff Mancuso cannot be held liable in his official capacity.

## CONCLUSION

Based on the foregoing, the motion to dismiss the § 1983 claims made against defendants, Deputies Marshall and Miller, in their individual capacities, for deliberate indifference to medical needs will be denied. The motion to dismiss the official capacity § 1983 claims and state law negligence claims against Sheriff Tony Mancuso, and Deputies Marshall and Miller for excessive

---

[53] Jenkins, 402 So.2d at 671.

[54] Pembaur v. City of Cincinnati, 475 U.S. 469, 480-481, 106 S.Ct. 1292 (1986).

force will be granted dismissing these claims. The motion to dismiss plaintiffs' state law negligence claims for breach of a duty of care concerning the medical needs of Dr. Deshotels will be denied. The claims against Sheriff Tony Mancuso, in his individual capacity will be granted dismissing all claims against Sheriff Tony Mancuso in his individual capacity.

The Court determines that there is no just reason for delay and will direct entry of final judgment under rule 54(b) of the Federal Rules of Civil Procedure.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 4 day of January, 2011.

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE